## MATTER OF SHAW

### In Deportation Proceedings

#### A-18492374
#### A-19182634

*Decided by Board July 2, 1976*

(1) Respondents, who are husband and wife, seek adjustment of status under section 245 of the Immigration and Nationality Act as nonpreference immigrants who are exempt from the labor certification requirement of section 212(a)(14) of the Immigration and Nationality Act based on the husband's investment in a restaurant.

(2) Male respondent failed to meet his burden of proof to show that he qualifies for exemption from the labor certification requirement as an investor under the evidentiary requirements set forth in *Matter of Ahmad*, 15 I. & N. Dec. 81 (BIA 1974) where photocopies of checks submitted as the primary evidence of the investment and allegedly issued in payment for items relating to the restaurant did not show what items had been purchased; where the financial statement submitted was unaudited and based exclusively on information supplied by respondent to the accountant and which indicated that the books had not been maintained in an acceptable manner from an accounting standpoint and from which expenditures could not be verified; and where respondent failed to submit documentation relating to the affairs of the enterprise or a satisfactory explanation for the absence of such documentation.

(3) Where the immigration judge concluded that the male respondent had previously been untruthful in his testimony concerning his prior employment in the United States, and found that female respondent had entered this country as a nonimmigrant with a preconceived intent to remain in the United States, denial of the applications for adjustment of status was warranted in the exercise of discretion notwithstanding the fact that respondents were the parents of a United States citizen child and may have developed other ties in the United States.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—
—remained longer (both respondents)

ON BEHALF OF RESPONDENT:
Robert S. Bixby, Esquire
30 Hotaling Place
San Francisco. California 94111

ON BEHALF OF SERVICE:
Brian H. Simpson
Trial Attorney

This case has been before us on several prior occasions, and it is now here on the respondents' appeal from the latest decision of the immigration judge, dated October 21, 1975. That appeal will be dismissed.

The respondents are husband and wife. The male respondent is a native and citizen of China, and the female respondent is a native and citizen of Japan. They have conceded deportability under section 241(a)(2) of the Immigration and Nationality Act as nonimmigrants who have remained beyond the authorized length of their stays. Throughout the course of these proceedings, the respondents have sought adjustment of status under section 245 of the Act. The only issues on appeal involve their application for that relief.

The respondents seek section 245 relief as nonpreference immigrants. The male respondent claims to satisfy the labor certification requirements of section 212(a)(14) as an "investor" within the contemplation of 8 CFR 212.8(b)(4). The eligibility of the female respondent for adjustment of status evidently depends on the case of her husband, because she claims no independent eligibility and apparently has no independent means of support.

The immigration judge denied the applications for adjustment of status, finding that the male respondent had not satisfactorily shown that he qualifies as an "investor," and that the respondents did not merit a favorable exercise of discretion in any event. We agree with the immigration judge in both respects.

The male respondent claims an investment of about $13,000 in a Chinese restaurant located in Santa Clara, California (Tr. p. 80). We last remanded the record to the immigration judge in part to enable the respondent to further document the alleged investment and thereby satisfy the burden of proof requirements set forth in *Matter of Ahmad*. 15 I. & N. Dec. 81 (BIA 1974).

At the reopened hearing, the male respondent presented photocopies of numerous checks allegedly used in payment for such items as furniture, equipment, and fixtures relating to the restaurant (see Exh. 9; Tr. pp. 64, 66). These checks constitute the primary evidence of the amount of the male respondent's investment. The checks, by themselves, however, do not show what items have been purchased by the male respondent, and the male respondent did not have any corresponding invoices to substantiate his testimony.

Many of the checks are merely made payable to the order of "cash." Others, such as the numerous monthly checks made out to "NCR," could easily be in payment for leased items. However, the amount of an investment under 8 CFR 212.8(b)(4) in leased items is limited to the funds which are devoted toward that item in any one month (i.e. a monthly rent plus any deposit). The rent on leased premises or equipment will generally come from the current earnings of the business, and neither the market value of the item nor the yearly rental figure is representative of the funds necessarily "invested" in that aspect of a business. Cf. *Matter of Ahmad*, supra (dealing with the same problem

795

as it relates to cumulative payments for revolving inventory). It is therefore not clear whether all of the checks represent payments which are properly claimable as part of the investment.

The male respondent's other major piece of documentary evidence in support of his investor claim is a financial statement of his business prepared by a public accountant in California. The financial statement, however, was prepared without an audit, and the accountant could not express an opinion as to the accuracy of the presentation. It appears that the male respondent's books were not maintained in an acceptable manner from an accounting standpoint, that certain cash expenditure items could not be verified by the accountant, and that the financial statement was prepared exclusively from data forwarded by the male respondent to the accountant. We find that the financial statement does not satisfy the requirements set forth in *Matter of Ahmad,* supra. The male respondent has not shown the amount of his investment, and he has therefore failed to show that he qualifies for this exemption from labor certification.

On appeal, counsel has attacked our holding in *Ahmad* as an attempt to single out investors for treatment which is different from that accorded other section 245 applicants with respect to evidentiary requirements. We did not declare in *Ahmad* that an investor has a higher burden of proof to meet than other section 245 applicants. Instead, our ruling merely requires that an investor claimant come forward with the best available evidence of his investment. There are sound reasons for such a requirement.

Section 212(a)(14) requires that the Department of Labor issue a labor certification for certain categories of aliens who seek to enter the United States to perform skilled or unskilled labor. An alien who qualifies under 8 CFR 212.8(b)(4) is exempt from this requirement. The exemption, however, should not merely be a means of circumventing the labor certification requirement for a skilled or unskilled laborer.

In the United States it is difficult to establish and operate a business of any significant size without generating some documentation reflecting the affairs of the enterprise. Large purchases of equipment and inventory are rarely unaccompanied by invoices or other indicia of a contractual arrangement. The market value of land, buildings, equipment and machinery can be appraised. Accounting audits can be conducted to verify the financial status of most enterprises. Finally, records required to be kept by various governmental authorities will frequently provide some indication of the nature and extent of a business venture.

In *Matter of Ahmad,* supra, we merely held that an investor claimant must be prepared to present some of this documentation, or satisfactorily explain why none of this exists for his business. We adhere to that ruling.

Counsel also argues that the male respondent gave an explanation for the absence of supporting documentation. We, however, can find no satisfactory explanation in the record for the male respondent's failure to present invoices or other supporting evidence. Even though the male respondent may have destroyed or lost many of the important documents relating to his business, it is not unlikely that the companies from which he has made purchases have kept some record of the various transactions. Thus, as an example, the male respondent could have satisfied us that the payments to "NCR" were not pursuant to a lease agreement merely by obtaining a copy of the original contract from that firm.

Counsel maintains that the male respondent gave credible testimony that all the checks presented in evidence related to the purchase of equipment, furnishings and fixtures for the restaurant. The immigration judge did not make a specific finding regarding the male respondent's credibility on this point. The immigration judge, however, did reaffirm his finding, initially made in his decision of August 26, 1970, that the male respondent was at times untruthful in his testimony at an earlier hearing. We agree with that finding. We decline to accept the male respondent's testimony on the amount of his investment because he has been untruthful before, he has not presented documentation which appears to us to be available from some source, and he has failed to adequately explain the absence of that documentation.

The male respondent has not shown that he is admissible to the United States for permanent residence under section 212(a)(14) of the Act. Neither respondent is statutorily eligible for adjustment of status.

The immigration judge also concluded that the respondents did not merit a favorable exercise of discretion on their applications for section 245 relief. That conclusion, reached after a weighing of the demonstrated favorable and unfavorable factors, was correct. See *Matter of Blas*, 15 I. & N. Dec. 626 (A.G. 1976); *Matter of Arai*, 13 I. & N. Dec. 494 (BIA 1970).

The respondents have one United States citizen child, they evidently hold some property here, and they presumably have developed other ties to the United States over the course of their stay. They also have alleged hardship in the potential breakup of the family. The male respondent claims he could not reside in Japan, the country of his wife's birth, and he doubts that his wife would be permitted to accompany him to Taiwan. In our decision of August 29, 1975, we remanded in part so that evidence of this potential separation could be introduced into the record. At the reopened hearing, no evidence was presented along these lines, other than the bare assertions of the male respondent. The respondents, who have the burden of proof on their section 245 applications, have not shown that their family would be separated permanently

upon deportation. The remaining favorable factors do not outweigh the adverse factors present in their case.

The immigration judge found that the female respondent entered the United States with a preconceived intent to remain permanently. Counsel concedes that finding to be correct. A preconceived intent to remain permanently is a significant factor bearing upon the exercise of discretion. See *Soo Yuen* v. *INS*, 456 F.2d 1107 (C.A. 9, 1972); *Ameeriar* v. *INS*, 438 F.2d 1028 (C.A. 3, 1971), cert. dismissed, 404 U.S. 801 (1971); *Chen* v. *Foley*, 385 F.2d 929 (C.A. 6, 1967), cert. denied, 393 U.S. 838 (1968); *Cubillos-Gonzalez* v. *INS*. 352 F.2d 782 (C.A. 9, 1965); *Castillo* v. *INS*, 350 F.2d 1 (C.A. 9, 1965). In the past, we have denied adjustment of status to aliens who entered with a preconceived intent to remain permanently, even though the aliens had significant family ties in the United States. *Matter of Muslemi*, 12 I. & N. Dec. 249 (BIA 1967) (United States citizen spouse); *Matter of Tonga*, 12 I. & N. Dec. 212 (BIA 1967) (United States citizen child and brother); *Matter of Rubio-Vargas*, 11 I. & N. Dec. 167 (BIA 1965) (lawful permanent resident spouse). See also *Matter of Allotey*, 15 I. & N. Dec. 351 (BIA 1975). The female respondent does not merit a favorable exercise of discretion.

As an adverse factor, the immigration judge found that the male respondent had been untruthful in his testimony during the hearing in 1970. Counsel disputes this finding. We, however, agree with the immigration judge.

In 1970, the male respondent was a partner in a Chinese restaurant in Palo Alto, California. He was receiving income of approximately $800 a month from his participation in that venture (Tr. p. 30). He evidently spent varying amounts of time working at the restaurant as a busboy, cook, waiter or cashier (Tr. p. 29).

Prior to revealing his participation in the restaurant on cross-examination, the male respondent testified that he had not been employed in the United States (Tr. p. 11), and that his means of support consisted of savings and family assistance from abroad (Tr. p. 15). The nature of the male respondent's employment was brought out on cross-examination and he thereafter amplified his testimony regarding his means of support (Tr. p. 45).

The immigration judge, who had an opportunity to observe the witness, concluded that the male respondent's testimony had been untruthful. An immigration judge's evaluation of a witness is entitled to considerable weight in this respect. *Matter of Teng*, 15 I. & N. Dec. 516 (BIA 1975); *Matter of S—*, 8 I. & N. Dec. 574 (BIA 1968); *Matter of T—*, 7 I. & N. Dec. 417 (BIA 1957). A denial of adjustment of status in the exercise of discretion was warranted in view of the male respondent's untruthful testimony.

The immigration judge accorded both respondents the privilege of

voluntary departure in his decision of August 26, 1970. The Service has not challenged that grant, and the respondents have never been forced to exercise that privilege because of the various remands of the record which we have ordered. The respondents therefore are still entitled to the privilege of voluntary departure in accordance with the immigration judge's order of August 26, 1970.

ORDER: The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondents are permitted to depart from the United States voluntarily within 28 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported in accordance with the immigration judge's order of August 26, 1970.